Filed 3/13/14  P. v. Valenzuela CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B246961 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA 382006) |
| v. | |
| MIGUEL VALENZUELA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melissa N. Widdifield, Judge.  Affirmed.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellant Miguel Valenzuela challenges his conviction for second degree robbery and assault with a deadly weapon. We affirm.

## PROCEDURAL HISTORY

Appellant was convicted by a jury of one count of second degree robbery (Pen. Code, § 211)[1] and one count of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found true a special allegation that, for the robbery count, appellant personally used a deadly and dangerous weapon. (§ 12022, subd. (b)(1).) It was further alleged appellant had suffered three prior convictions pursuant to the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), as well as three prior convictions under section 667, subdivision (a)(1) and three prior prison terms under section 667.5, subdivision (b). Appellant waived his right to a jury trial on the prior convictions and prison terms and admitted they were true. He was sentenced to 41 years to life in prison for the robbery count, consisting of 25 years to life under the Three Strikes law, plus 15 years under section 667, subdivision (a)(1) (five years for each prior conviction), and one year under section 12022, subdivision (b)(1). The court stayed appellant's sentence on the assault with a deadly weapon count. (§ 654.) Appellant timely appealed.

## STATEMENT OF FACTS

On March 10, 2011, at around 5:20 a.m., victim Jose Lino was walking toward a train station in the area of 20th Street and San Pedro Street when a man later identified as appellant grabbed him by the collar, told him not to run, and demanded his money and valuables. Lino said he did not have anything, and appellant continued to demand his valuables several more times. Appellant had his hand in his pocket and told Lino he was going to stab him. Because Lino believed appellant had a knife and would hurt him, he gave appellant all the cash he had, which was $3.

Appearing angry, appellant demanded Lino's cell phone several times, and Lino repeatedly refused to give it to him. Appellant then pulled out a red Swiss Army-style

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

pocketknife, pointed it toward Lino's left side between his stomach and chest, and continued to demand Lino's phone. Not wanting to get hurt, Lino gave appellant his "iPhone," and appellant walked away toward 21st Street, telling Lino not to call the police or appellant would kill him. The confrontation lasted two or three minutes and Lino got a good look at appellant's face. At the time appellant was wearing a black sweater with a hoody, a cap, and denim jeans, and was using a cane.

Lino ran to a nearby 7-Eleven store, but when the store clerks refused to let him use the phone, he flagged down uniformed Los Angeles Police Department Officers Thomas Sherwood and Javier Quinones, who were patrolling the area in a black and white police car. By this time, three to five minutes had passed since the robbery. Lino told them he had been robbed at knifepoint and described the perpetrator as having "a hoody and he was Hispanic, and he was in his late forties, early fifties. With a cane. With a cap on." Lino got into the patrol car and directed the officers toward the direction he had seen appellant heading.

On 22nd Street, Officer Sherwood saw a man outside a residence matching the description given by Lino, and when the man saw the police car, he quickly "ducked into the house." The officers parked, approached the residence with guns drawn at their sides, and knocked on the door, which was ajar. Officer Quinones saw someone inside and ordered that person out, who was an older Hispanic male who had difficulty walking; he was followed out by appellant, a female individual, and a younger male eventually not considered a suspect. The officers handcuffed appellant and the older man and had them stand next to the police car. Still in the police car, Lino was read an in-field admonishment, and he immediately identified appellant as the person who robbed him.

Appellant waived his *Miranda*[2] rights and told Officer Quinones the cell phone was in the house under the bathroom sink and the knife was under a sofa cushion in the living room. Officer Sherwood searched the residence and found the phone and

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

3

the knife in the locations described by appellant and Lino positively identified both items.

Appellant testified and denied robbing Lino. At the time of the robbery he had been "up all night partying" and doing heroin with two other men at the house on 22nd Street, a drug house where "people come and party." In the early morning hours of March 10, 2011, he went to a donut shop in the San Pedro area; at the time he was wearing white tennis shoes, black jeans, and a blue long sleeve shirt. As he was walking back to the house, "this guy" came up to him on a bike and asked if he would like to buy a phone. The man was a "Mexican guy," with a white mustache and "[k]ind of thin." Appellant bought the phone for $10 and the man "took off on his bike" toward San Pedro Street. Appellant knew the phone was stolen and explained that "anybody in their right mind is going to buy a phone for ten bucks if they can make a dollar off of it." Appellant took the phone back to the house and hid it because he did not want to walk around with a stolen phone.

The officers arrived at the house a few minutes after appellant returned. Appellant stood in the doorway looking out and smoking a cigarette when he saw the officers coming; he did not run. With guns drawn, officers flashed a light on appellant and told him to come outside, but appellant went into the house and told the "guy that stays there" the police were outside. That individual "got all excited and got up and came out to the door," and the officers took him outside. The officers took another man outside, and appellant finally emerged. The officer handcuffed the first man and appellant. According to appellant, the officers "started playing this patticake, from me to the other guy, from me to the other guy," and finally Officer Quinones said, "fuck it," and put appellant in the police car. Appellant did not see Lino at all.

In response to questioning from the officers, appellant denied knowing anything about a robbery, but he told them where to find the phone and how he had bought it. He never said anything about a knife and knew nothing about it.

Appellant admitted he had two prior felony convictions for robbery, one in 1990 and one in 1999.

4

Officer Sherwood testified appellant told him at the scene he had "just bought [the phone] off a cholo on San Pedro." He did not believe appellant because only 10 minutes had elapsed between when Lino told police he was robbed and when officers arrived at the house where appellant was arrested.

## DISCUSSION

### 1. Cross-examination on Prior Convictions

Appellant asserts interrelated claims for prosecutorial misconduct and evidentiary error during his cross-examination on his 1990 and 1999 robbery convictions. As alleged in the amended information, appellant had three prior felony convictions: (1) a 1984 conviction for robbery and kidnapping (§§ 207, 211); (2) a 1990 conviction for robbery (§ 211); and (3) a 1999 conviction for robbery (§ 211). Prior to trial, defense counsel moved to exclude these prior convictions because they were unduly prejudicial and at least the 1984 and 1990 convictions were too remote in time. The prosecutor countered they were not too remote because appellant had been in prison for most of the time since his 1984 conviction and the prior convictions were "mirror image[s]" of the current allegations. The court excluded the 1984 conviction, but found the 1990 and 1999 convictions admissible. For those convictions, the court found them more probative than prejudicial because appellant had not remained free from custody for "substantially all of the period in between the convictions." Upon request from defense counsel, the court clarified those convictions could be used as "impeachment for moral turpitude" if appellant testified and that the prosecutor could "elicit that he's been convicted of a robbery. And that involves force or fear."[3] Defense counsel objected, arguing the jury should only be told the convictions were for "robbery" and the jury did not "need to know the elements. They're going to be

---

[3]    The court initially stated the 1990 and 1999 convictions would be admitted for "all purposes," but ultimately their admission was limited to impeachment. The jury was also instructed that it may only consider prior felony convictions in evaluating a witness's credibility.

getting them from their case. But I believe it should just be a robbery." The court did not further rule on the issue at that time.

During trial, defense counsel again raised the issue outside the presence of the jury:

"[Defense counsel]: I was going to ask the court to consider the factors regarding the prior convictions coming in, and asking the court to have it come in as crimes of moral turpitude, and not robbery with force or fear, because of the [Evidence Code section] 352.[4] Way more prejudicial than probative. [¶] And back during the [Evidence Code section] 1101(b)[5] evidence, stating that he has two felony convictions, we can go through the years, for crimes of moral turpitude. Which is used for impeachment. Otherwise it's way too prejudicial and it's sounding more like propensity evidence versus impeachment with moral turpitudinous conduct.

"The court: Counsel, I actually had been thinking about this issue quite a lot on my own. I can tell you this. I certainly don't have a problem saying have you been convicted of a moral turpitude crime. The prosecutor can certainly elicit that [appellant] was convicted of robbery and I frankly wanted to let her use the phrase armed robbery. [¶] But I was reconsidering letting [the prosecutor] use the phrase force or fear. I think that is perhaps overly prejudicial under 403 and the *Beadle*[6]

---

**4**     Evidence Code section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

**5**     Evidence Code section 1101, subdivision (a) generally prohibits evidence of a person's character to prove conduct on a specified occasion, but subdivision (b) allows admission of that evidence to prove some other fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. As noted *ante*, appellant's prior convictions were admitted for impeachment, not for any reason listed in Evidence Code section 1101, subdivision (b).

**6**     The court was likely referring to *People v. Beagle* (1972) 6 Cal.3d 441, 453, which set forth factors to consider in assessing admission of a defendant's prior convictions for impeachment purposes. (See *People v. Clark* (2011) 52 Cal.4th 856,

6

factors.  So I think that is how I would modify my ruling.  And frankly I was going to raise that on my own completely independently of [defense counsel].

"[The prosecutor]:  So robbery?

"The court:  Yes.

"[Defense counsel]:  Just robbery in 1990 and robbery in -- '99 and '90.

"The court:  Yes.  I would limit it to robbery and the dates.

"[The prosecutor]:  And Your Honor, in light of the court limiting the People, I would just reiterate that I think that his 1984 conviction, while remote, in light of the amount of time and his failure to stay free from custody, that doesn't make it remote.  I think that it is relevant, and I think it is more probative than prejudicial.

"The court:  I will reconsider it.  I hadn't thought about it.  I had only thought about the force and fear issue.  I will think about that overnight and let you know tomorrow.  All right.  Thank you."

The next day the prosecutor began cross-examining appellant by asking him, "[Y]ou were convicted of armed robbery in 1990; correct?"  He responded, "I was convicted of robbery."  Defense counsel objected, and the court sustained the objection.  The parties approached the bench and had the following discussion with the court:

"[The prosecutor]:  The court's previous ruling was that I could elicit armed robbery but I could not say taking property by force or fear.

"The court:  However, asking about armed robbery--

"[The prosecutor]:  The court actually stated that.  That I could even go that far.

"The court:  I have absolutely no recollection of that.  I've got to tell you that.  I don't remember that ever coming up.

---

931 (*Clark*).)  The court's reference to "403" may have been an inadvertent allusion to Federal Rules of Evidence (28 U.S.C.), rule 403, the federal counterpart to Evidence Code section 352.

"[Defense counsel]: That implies armed robbery is with a gun or something like that. I don't have any reports. It's a conviction for a robbery, 211. As far as I know, there is no indication that there was any type of gun, any type of weapon.

"The court: Okay. I have to tell you, I do not recall saying that at all. But I'm rethinking that and saying that I didn't think it was appropriate."

The prosecutor returned to questioning appellant. At the time, defense counsel did not ask the court to strike the prosecutor's question or give a curative instruction to the jury.

The prosecutor proceeded to impeach appellant with his prior convictions without using the word "armed." After appellant admitted the 1990 and 1999 convictions for robbery, the prosecutor asked him, "But you had nothing to do with this robbery?" He responded, "No, ma'am."

When the defense rested, defense counsel asked for a curative instruction regarding the prosecutor's "armed" robbery question, which the court denied:

"[Defense counsel]: We were requesting a special instruction regarding the question posed by the prosecutor concerning whether or not my client was convicted of armed robbery. I believe that was prejudicial. It was sustained. It was out there. [¶] It had already been ruled upon. And I believe it's very prejudicial, because it would imply an armed robbery, basically, with a weapon, and we don't have anything in front of us indicating that that was the situation. [¶] According to his rap sheet, both the 1990 and 1999 were both 211's. I don't see anything additional. Like in 1984. I believe there should be an instruction to cure it. Since the jury has heard it and it may imply that it might have been true that there was an armed robbery conviction.

"The court: The court had indicated, first of all, it sustained with the defendant's objection with respect to the word robbery. In addition, the court is not aware actually of what any of the facts are with respect to the 1999 and 1990 robberies. And the court doesn't want to be in a position of instructing the jury with respect to factually inaccurate matters. [¶] I don't believe, to the extent that the jury

8

heard it at all, I -- the court doesn't believe that it is so prejudicial that the court should raise the issue separately. And the court declines to do so. [¶] In fact, frankly, I think that it will have just the opposite effect that counsel wants."

While not giving a specific curative instruction for the "armed" robbery question, the court instructed the jury, "Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true. [¶] During the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses. I ruled on the objections according to the law. If I sustained an objection, you must ignore the question. If the witness was not permitted to answer, do not guess what the answer might have been or why I ruled as I did. If I ordered testimony stricken from the record you must disregard it and must not consider that testimony for any purpose." The court also instructed the jury on the factors in evaluating witness credibility and that felony convictions could only be used to evaluate a witness's credibility.

Appellant does not dispute his 1990 and 1999 robbery convictions were generally admissible for impeachment purposes because they involved crimes of moral turpitude. (Evid. Code, § 788; *Clark, supra*, 52 Cal.4th at p. 932.) Nor does appellant challenge the trial court's balancing of the factors under Evidence Code section 352 in admitting the convictions. (*Clark, supra*, at p. 931 ["When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify."].)

Instead, appellant claims his federal constitutional rights to due process and a fair and impartial jury were violated because (1) the trial court improperly failed to

strike the prosecutor's "armed" robbery question and admonish the jury to ignore it after it sustained defense counsel's objection; (2) the prosecutor committed misconduct by using the word "armed" in questioning appellant; and (3) the prosecutor committed misconduct when, after impeaching appellant with his prior convictions, she asked, "But you had nothing to do with this robbery?" We reject these contentions.

"Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*Clark, supra*, 52 Cal.4th at p. 932.) The introduction of a prior felony conviction for impeachment is "restricted to the name or type of crime and the date and place of conviction." (*People v. Allen* (1986) 42 Cal.3d 1222, 1270.) "The scope of inquiry when a criminal defendant is impeached with evidence of a prior felony conviction does not extend to the facts of the underlying offense." (*People v. Heckathorne* (1988) 202 Cal.App.3d 458, 462.)

Here, the trial court acted within its discretion in sustaining defense counsel's objection to the "armed" robbery question without also striking the question and admonishing the jury. At the time the trial court sustained the objection to the prosecutor's question, defense counsel did not ask the trial court to strike the question or admonish the jury, which could have cured any remaining harm after the objection was sustained. (See *People v. Stanley* (2006) 39 Cal.4th 913, 952 ["Although defense counsel lodged objections to these remarks, he failed to further request admonitions that could have cured any harm, thereby waiving the claim on appeal."].) By the time defense counsel did ask for a curative instruction at the close of appellant's case, the trial court was reasonably concerned a curative instruction would have risked highlighting the question instead of minimizing it. Also, the trial court reasonably believed any prejudice had been reduced by sustaining the objection at the time of the questioning and that the lack of evidence on the prior convictions may have led to

10

instructing the jury with inaccurate facts.[7]  Any lingering prejudice was further ameliorated by the trial court's instruction on witness credibility, as well as the instruction that the attorneys' questions were not evidence and the jury must disregard any questions for which an objection was sustained, which we presume the jury followed.  (*People v. Hinton* (2006) 37 Cal.4th 839, 864 (*Hinton*).)

Appellant's prosecutorial misconduct claims fare no better.  "'A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it "infects the trial with such unfairness as to make the conviction a denial of due process."  [Citations.]  In other words, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  [Citation.]  A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."  [Citations.]'  [Citations.]"  (*Clark, supra*, 52 Cal.4th at p. 960.)  The prosecutor's two questions were not so egregious as to result in a denial of due process, so the question is whether the prosecutor violated state law by using ""deceptive or reprehensible methods to attempt to persuade . . . the jury.""  (*Ibid.*)

The prosecutor did not commit misconduct in asking whether appellant's 1990 conviction was for "armed" robbery in light of the ambiguous ruling by the court on the issue.  In the discussion of this issue before appellant's cross-examination, the trial court stated, "I frankly wanted to let [the prosecutor] use the phrase armed robbery."  The parties and the court then focused on the phrase "force or fear," which the court excluded.  The prosecutor asked, "So robbery?"  The court responded, "Yes."  Defense counsel asked, "Just robbery in 1990 and robbery in -- '99 and '90."  The court

---

**7**     The prosecutor claimed she had the police reports for appellant's prior convictions, which "read like a mirror image of the current offense," but those reports were not admitted into evidence.  In appellant's probation report included in the record on appeal, there was no indication the 1990 and 1999 prior convictions were for "armed" robbery.

11

responded, "Yes. I would limit it to robbery and the dates." While it is likely the trial court intended to limit the questioning to "robbery and the dates," that was by no means clear, especially given the court's earlier suggestion it would also let the prosecutor use the phrase "armed" robbery. The prosecutor explained at sidebar during trial she interpreted the court's ruling to allow her to use the phrase "armed" robbery. Under these circumstances, we cannot say the prosecutor committed misconduct.

By not objecting or asking for an admonition, appellant forfeited his claim of misconduct based on the prosecutor's question, "But you had nothing to do with this robbery?" (*Clark, supra*, 52 Cal.4th at p. 960.) Even on the merits, the question was not improper. The prosecutor properly used the prior convictions to cast doubt on appellant's credibility in denying he was involved in the instant robbery. (*Hinton, supra*, 37 Cal.4th at p. 870.) Any possibility the jury might have interpreted the prosecutor's question as suggesting appellant had a propensity to commit robbery was ameliorated by the court's jury instruction limiting evidence of felony convictions to impeachment. (*Clark, supra*, at p. 934 [finding instructions sufficiently set forth the limited purpose of impeachment evidence, including prior felony convictions].)

Finally, even if the trial court erred and the prosecutor committed misconduct, any errors were harmless under both *Chapman v. California* (1967) 386 U.S. 18, 24 (harmless beyond a reasonable doubt) and *People v. Watson* (1956) 46 Cal.2d 818, 836 (reasonable probability of a more favorable outcome). The evidence appellant committed the current robbery was overwhelming. Within minutes after the robbery, officers located appellant and Lino immediately identified him. Officers then recovered Lino's cell phone and the knife in the locations identified by appellant inside the house where appellant was arrested. The jury was entitled to reject appellant's defense that he bought the phone "off a cholo on San Pedro," given only 15 minutes had elapsed between the robbery and the officers' arrival at the house where he was arrested.

## *2.* **Pitchess** *Claim*

Prior to trial, appellant moved pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), for discovery of documents relating to complaints against Officers Sherwood and Quinones for "violation of rights; fabrication of charges and/or evidence and/or reasonable suspicion or probable cause; execution of illegal searches or seizures; false arrests; perjury; dishonesty; writing of false police reports; planting of evidence; writing of false or misleading internal reports including but not limited to: false overtime or medical reports; or any moral turpitude misconduct . . . ." (See Evid. Code, §§ 1043-1045.) The trial court granted the motion limited to records of dishonesty and reviewed the officers' personnel records in camera with the custodian of records present. The court found no discoverable information.

We have independently reviewed the in camera *Pitchess* proceedings, including the sealed reporter's transcript of the review of the personnel records. We conclude the trial court properly evaluated the materials and reasonably exercised its discretion in refusing to disclose any information. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)

### DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

13